UNITED STATES *v.* THE J. D. RICHARDSON COMPANY (No. 4583)[1]

[1] C. A. D. 390.

Paul P. Rao, Assistant Attorney General (Alfred A. Taylor, Jr., Richard F. Weeks, and Howard L. Harawitz, special attorneys, of counsel), for the United States.

Eugene R. Pickrell for appellee.

[Oral argument October 7, 1948, by Mr. Weeks and Mr. Pickrell]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, consisting of approximately 17,000 tank idler wheel "flanged" rims, was assessed for duty by the collector at the port of Detroit at 27½ per centum ad valorem as parts of machines, under paragraph 372 of the Tariff Act of 1930.

It appears from the record that so-called "flat bands" or "rims," not flanged, were exported by the Kelsey-Hayes Wheel Company of Detroit, Michigan, to its plant in Windsor, Canada, for the purpose of having the rims "flanged," in accordance with the specifications and requirements of the Ordnance Department of the United States Army; that the articles were "flanged" by three pressing operations performed in the Canadian plant; and that they were returned to the Kelsey-Hayes Wheel Company plant in Detroit and used exclusively as finished parts of an assembly of idler wheels for use on the T-26 tank which weighed approximately thirty tons.

It further appears from the record that it was necessary, for their practical use and to conform to the specifications of the Ordnance Department of the United States Army, that the rims contain flanges to strengthen them and that they could not be used in their condition as exported, for the purposes hereinbefore stated. It clearly appears from the record that the processes to which the so-called "rims" were subjected in Canada were necessary to make them completed parts of machines and that when, by the processes performed in Canada, they were returned to the Kelsey-Hayes Wheel Company in Detroit, they were completed "flanged" rims and all that was necessary to put them in condition for use as parts of the assembly of idler wheels for use on the T-26 tank was that they be cleaned. It is not argued that, in their exported condition, they could have been used as parts of any other machines.

The importer, who acted as customs agent for the Kelsey-Hayes Wheel Company, protested the collector's classification, claiming that the rims were dutiable at 27½ per centum ad valorem under paragraph 372, supra, upon the value of the so-called "alterations" of the rims, in accordance with paragraph 1615 of the Tariff Act of 1930, as

amended by paragraph 1615 (g) of the Customs Administrative Act of June 25, 1938.

Paragraph 372, *supra,* so far as pertinent reads:

\* \* \* all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem; *Provided,* That parts, not specially provided for, wholly or in chief value of metal \* \* \* shall be dutiable at the same rate of duty as the articles of which they are parts: \* \* \*

Paragraph 1615 (g), *supra,* reads:

Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

Customs Regulations of the United States, 1943, section 10.8 (*a*) reads:

10.8 Articles exported for repairs or alterations.—(*a*) For the purposes of paragraph 1615 (g), Tariff Act of 1930, as amended, the term "repairs or alterations" shall be held to mean any restoration, change, addition, renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create a new or different article.

The trial court sustained the protest of the importer, holding that the articles had merely been altered in Canada, within the purview of the term "alterations" as used in paragraph 1615 (g), *supra,* and that the rate of duty of 27½ per centum ad valorem should be applied only to the value of the processes of producing the flanges in Canada, and not to the value of the entire rims.

We have given careful consideration to the views expressed by the court below and to those of counsel for appellee, but are constrained to disagree with those views.

It clearly appears from the record that the articles exported to Canada were not parts of machines but were manufactures of metal. It is true that they had been so processed as to be dedicated to the use of making rims for the T–26 tank. However, they were not completed parts but, on the contrary, required the manufacturing processes hereinbefore referred to in o·der to complete them as "flanged" rims for their intended use. Broadly, it may be said, as seems to have been held by the trial court, that the term "alterations" of articles means any manufacturing process to which articles may be subjected. We are of opinion, however, that the Congress did not intend by the term "alterations" in paragraph 1615 (g), *supra,* to mean that uncompleted articles, such as those here involved, manufactured in the United States or imported into the United States, could be exported to a foreign country and there manufactured into completed articles such as those in the case at bar, and when returned to the United States, be subject only to duties on the so-called "alterations" provided for in paragraph 1615 (g), *supra.* It is clear from

paragraph 1615 (g), however, that Congress intended to broaden the scope of paragraph 1615 of the Tariff Act of 1930 and to permit articles to be exported not only for the purpose of repairs but for alterations thereof, and to be returned to the United States upon the payment of a duty upon the value of the alterations, or repairs, at which the articles would be subject if imported in their altered or repaired condition. We are of opinion, however, that it was not intended by the word "alterations," contained in paragraph 1615 (g), *supra*, to permit articles, such as in the instant case, to be exported in an unfinished condition which could not have been classified as parts of machines, and so manufactured abroad that upon their return would be properly dutiable as parts of machines. Had the "unflanged" articles, exported to Canada, been imported into the United States in an "unflanged" condition, in view of the record in this case, they certainly could not have been classified as parts of machines under paragraph 372, *supra*.

We have frequently held that a part of an article is something necessary to the completion of that article and that it is an integral, constituent, or component part without which the article to which it is to be joined could not function as such article. See *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851.

It may be observed, furthermore, that paragraph 372, *supra*, provides "* * * That parts, not specially provided for, wholly or in chief value of metal * * * shall be dutiable at the same rate of duty as the articles of which they are parts, * * *" and it also provides for "* * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *" So far as the issues here are concerned, that paragraph differs from paragraph 372 of the Tariff Act of 1922 which provided for "* * * all other machines *or parts thereof, finished or unfinished,* not specially provided for, 30 per centum ad valorem: * * *" [Italics ours.] It is apparent, therefore, that although paragraph 372 of the Tariff Act of 1922 provided for parts, finished or unfinished, of all other machines not specially provided for, paragraph 372 of the Tariff Act of 1930 does not provide for parts of machines in an unfinished condition. The change in the two paragraphs obviously discloses a congressional intent to limit the provision for parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, to those that are in a finished condition.

Had the involved articles been completed, and for some reason or other required some alterations, a different issue would have been presented.

It is not argued here that the imported "flanged rims" are not finished parts of machines.

We are of opinion that the so-called "rims," exported to Canada, were not subjected to mere alterations within the purview of paragraph 1615 (g), *supra*, and that the "flanged" rims were properly assessed by the collector as parts of machines at 27½ per centum ad valorem, under paragraph 372 of the Tariff Act of 1930.

For the reasons stated, the judgment of the trial court is *reversed*.